IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

                    Plaintiff,

    v.

ROMAN T. KAPLAN, PRAPTI P. KUBER,
KRISTINE A. LYON, KIM MOLDENHAUER,
PAULA L. STELSEL, MICHELLE K. BURTON,
TERESA H. SCHUSTER, MICHAEL A. LAMARCA,
CRAIG M. ROSENTAL, LEE MANN,
KAREN E. SCHOENIK, SHIRLEY A. NEWCOMB,
KIMBERLY K. WALKER DANIELS, BRIANNA M.,
KRISTINE M. KLOMBERG, DEANNA D. KASPER,      OPINION and ORDER
REBECCA GIESE, JOHN WICHMAN,
BARTELS RORHBECK, MARY K. BREITKREUTZ,          20-cv-15-jdp
KATHLEEN M. BUWALDA, AMBER L. DOCTOR,
LISA A. ALVAREZ, JEANETTE M. GRAINGER,
DUSTIN RIGGINS, SUZANNE M. WENDLANDT,
KRISTIN R. SCHMIDT, LAURA WOLLET,
CARMEN BAUER, JENNIFER L. HILEY,
KIMM M. JOHNSON, LT. LANGRUD, SHARI SMET,
JOHN RAIMAN, ROBERT NUMMERDOR,
JOHN W. SIEBERT, EMMANUEL MARTINEZ-
BEHENA, STEPHANIE BAILEY, JANE DOE I,
JANE DOE II, JANE DOE III, and DR. VAN GEMERT,

                    Defendants.

---

      Pro se plaintiff Robert Alexander has filed suit under 42 U.S.C. § 1983 against more than 40 medical, dental, psychological, and prison workers, alleging that they have failed to treat his serious medical needs. Alexander's complaint is before me for screening under 28 U.S.C. § 1915A. At screening, I must accept Alexander's well-pleaded allegations as true, and I must hold his complaint to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I conclude that Alexander has failed to state claims against 39 of the 42 defendants he identifies, so I will dismiss those defendants from the case. Alexander does state an Eighth Amendment medical care claim against defendant Paula L. Stelsel, and he may be able to state claims against additional defendants if he files a supplement to his complaint that further explains his allegations. But under Rule 20 of the Federal Rules of Civil Procedure, Alexander cannot pursue these potential claims together in one case.  I will give Alexander a short deadline by which to choose which claims he would like to pursue in this lawsuit and supplement his allegations, if necessary.

ALLEGATIONS OF FACT

The following facts are drawn from Alexander's complaint, as well as publicly available sources, such as records from other cases Alexander has filed in this court.

Alexander is a prisoner in the custody of the Wisconsin Department of Corrections (DOC). He suffers from numerous medical conditions, including cancer, hepatitis-C, methicillin-resistant Staphylococcus aureus (MRSA), latent tuberculosis, fibromyalgia, deaf-mutism, cataracts, lockjaw, and severe rheumatism. He cannot walk, he has no teeth, and he relies on a whiteboard and markers to communicate. Alexander's complaint contains allegations related to (1) incidents that arose in the course of his treatment for throat cancer; (2) the DOC's refusal to provide him with hearing aids; and (3) the delayed response of certain prison officials to a medical emergency that Alexander experienced on February 13, 2018.

A.  **Incidents related to throat cancer treatment**

One of Alexander's other lawsuits in this court, *Alexander v. Tapio*, No. 17-cv-861 (W.D. Wis. filed Nov. 13, 2017), concerns Alexander's allegations that prison health care providers

have consciously disregarded his serious medical needs in treating his throat cancer. Alexander's new complaint includes additional allegations related to Alexander's throat cancer treatment. I understand it as Alexander's effort to pick up where his other lawsuit leaves off.

Alexander underwent two surgeries and several weeks of radiation treatment that his providers hoped would resolve his throat cancer. Unfortunately, in July 2019, defendant Roman T. Kaplan, a doctor, informed Alexander that he would need additional radiation treatments. Defendant Kim Moldenhauer, a nurse practitioner, was present when Kaplan told Alexander this.

On October 9, 2019, Alexander was transported to the University of Wisconsin Hospital and Clinics for a CT scan. He was escorted there by two transportation officers, Shari Smet, a sergeant, and John Raiman, a corrections officer. Smet and Raiman refused to give Alexander his whiteboard and dry-erase marker, which prevented him from communicating with medical staff. It is not clear what happened as a result.

B.  **Denial of hearing aids**

Back in 2011, officials at Waupun Correctional Institution (WCI), Alexander's former prison, refused to give him two hearing aids instead of one, even though an audiologist believed that Alexander would need two hearing aids to experience a benefit. (Alexander filed a lawsuit about this, *see Alexander v. Sumnicht*, No. 11-cv-153 (W.D. Wis. filed Feb. 28, 2011), but that lawsuit was dismissed based on Alexander's failure to exhaust his administrative remedies.) At some point in 2016, Alexander was placed in segregation, and his single hearing aid was sent to WCI's health services unit by WCI's property sergeant. The health services unit manager never returned Alexander's hearing aid, and Alexander has gone without any hearing assistive device ever since.

Alexander was transferred to Dodge Correctional Institution (DCI), his current prison, in 2017. At DCI, Alexander was given a whiteboard board and dry-erase marker to communicate with staff and fellow inmates. On March 6, 2019, Alexander was tested by a University of Wisconsin Hospital and Clinics audiologist. (He does not say what the results of that testing were.) Alexander asked the infirmary manager (whom Alexander identifies in the caption as defendant Paula L. Stelsel) for two hearing aids, but his request was denied. Alexander says that as a result of the Department of Corrections' refusal to furnish him with two hearing aids, he has been unable to hear anything since his incarceration began in 2006.

**C. February 13, 2018 emergency medical response**

On February 13, 2018, a few weeks after undergoing an unsuccessful surgery for tonsil cancer, Alexander's nose began bleeding. Before Alexander could call for help, he began coughing and vomiting blood. Alexander pushed the emergency call light on the wall of his cell, but "it seem[ed] like anywhere between 15 minutes to a[] half hour before staff arrived." Dkt. 1, at 4. Alexander says that this incident was "witnessed" by Pamela Masteller, a licensed practical nurse, and Allison Briggs, a certified nursing assistant, but he doesn't name either of these individuals as defendants. Alexander also says that Collin Visser, a correctional officer, and "many other staff" merely "stood in the doorway" and "appeared to be making fun and laughing" at Alexander. *Id.* Joseph Jahnke, a lieutenant who was also present, "made a closed fist" at Alexander when Alexander was "unable to walk to get on [the] ambulance." *Id.* Neither Visser nor Jahnke are listed as defendants. Alexander estimates that the ambulance "was delayed about 3 hours." *Id.*

ANALYSIS

Alexander attempts to assert claims against 42 individuals who he says have "repeated[ly] denied and/or delayed . . . medical treatment" for his serious medical needs. *Id.* at 2. His allegations implicate the Eighth Amendment to the United States Constitution. The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with conscious disregard to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). A prisoner states an Eighth Amendment claim based on deficient medical care by alleging that (1) he has an objectively serious medical condition; (2) defendants knew that he had a serious medical condition that required treatment; and (3) defendants disregarded his serious medical condition by failing to take reasonable measures to address it. *Arnett*, 658 F.3d 750; *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Alexander's allegations suggest that he has several serious medical needs. But for the most part, Alexander has failed to allege facts sufficient to show that the defendants he identifies knew about those needs and consciously disregarded them. For instance, Alexander alleges that there was an unreasonable delay in providing him with emergency medical care on February 13, 2018, but he doesn't identify the defendants he believes are responsible for that delay. Indeed, of the 42 defendants that Alexander lists in the caption of his complaint, he includes specific allegations about only five of them: (1) Kaplan; (2) Moldenhauer; (3) Smet; (4) Raiman; and (5) Stelsel. And of these five defendants, Alexander states an Eighth Amendment claim against only one defendant: Stelsel.

Alexander's allegations about Kaplan and Moldenhauser—that Kaplan informed Alexander that he would need additional radiation treatments and that Moldenhauser

5

witnessed this conversation—does not state a claim under the Eighth Amendment because there is no suggestion that either defendant disregarded Alexander's medical needs.

Alexander's allegations about Smet and Raiman come closer to stating an Eighth Amendment claim, but they too are inadequate. Alexander alleges that these defendants refused to provide him with his whiteboard during his October 19, 2019 CT scan. For purposes of screening, I can infer that both Smet and Raiman knew that Alexander suffers from deaf-mutism and that, by denying him the means to communicate with his medical providers, they failed to take reasonable measures to address Alexander's condition. But Alexander's complaint does not explain how being denied a whiteboard on October 19 harmed him. A complaint must describe "the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601 (7th Cir. 2016). By failing to include any information about how he was injured by Smet and Raiman's actions, Alexander has failed to give those defendants fair notice of his claims and the grounds for them.

Alexander's allegation that Stelsel denied his request for hearing aids does state a claim under the Eighth Amendment: I can infer at screening that Stelsel knew that Alexander's hearing impairment was a serious medical need, and that by denying his request for hearing aids, she consciously failed to take reasonable measures to address that need. I can also infer that Alexander has been harmed by this denial by assuming that Alexander's inability to hear constitutes an injury and that hearing aids would confer a benefit on Alexander by enabling him to hear.

At this point, Alexander has stated an actionable Eighth Amendment claim against Stelsel only. But his allegations about Stelsel constitute only one of three potential claims that

6

I understand Alexander to be attempting to assert, with the other two being: (2) claims against Smet and Raiman based on the denial of the whiteboard; and (3) claims against the individuals responsible for the delayed response to Alexander's February 13, 2018 medical emergency. As Alexander knows from his prior litigation in this court, the Federal Rules of Civil Procedure do not allow Alexander to prosecute these claims together in a single lawsuit. Under Rule 20, a plaintiff may name multiple defendants in a lawsuit only if the plaintiff asserts claims against all of them that (1) arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) include a question of law or fact that will apply to all of the defendants. Once a defendant has been properly joined under Rule 20, the plaintiff may bring any other claims he has against that defendant, regardless whether those claims arise out of the same transaction or occurrence or include a common question of law or fact. But a plaintiff may not bring unrelated claims against defendants who have not been properly joined under Rule 20. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Alexander's claim against Stelsel, his potential claims against Smet and Raiman, and his potential claims against the individuals responsible for the delayed response to his February 13, 2018 medical emergency do not arise out of the same transaction, occurrence, or series of transactions or occurrences. They involve events that arose at different times, involved different people, and implicated different types of deprivations. Unless Alexander can explain how his allegations arise out of the same transaction or occurrence, they must be broken into separate lawsuits.

Because it isn't clear which of his three potential claims Alexander wishes to pursue in this lawsuit, I will stay service of the complaint until Alexander has filed a response indicating which of these three lawsuits he would like to pursue under this case number. If Alexander

7

chooses to use this lawsuit to pursue claims against Stelsel, that is all he needs to say. If Alexander chooses to use this lawsuit to pursue claims against Smet and Raiman, he must explain how he was harmed by their refusal to give him a whiteboard on October 9, 2019. If Alexander chooses to use this lawsuit to pursue claims based the delayed response to his medical emergency on February 13, 2018, he must identify the defendants responsible for that delay and explain how their actions or inactions injured him.

If Alexander would like to pursue more than one of these three potential lawsuits, he may inform the court of that fact. Assuming that Alexander states a valid claim for relief on the claims in question, I will direct the clerk of court to open a new case for those allegations. Alexander will need to pay an initial partial payment of the filing fee for any new lawsuit that gets filed. He should also think carefully about whether he has the capacity to simultaneously litigate several cases.

To summarize, I am giving Alexander a short deadline by which to indicate which of the three lawsuits identified above he wishes to pursue under this case number. If Alexander selects one of the two potential lawsuits that do not currently state a claim for relief, he must correct those defects by providing a supplement to his original complaint. If Alexander wishes to pursue more than one of the three potential lawsuits, he must say so in his response. If Alexander does not file a response indicating how he wishes to proceed by the date below, I will dismiss this case for his failure to prosecute it.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert Earl Alexander may have until May 28, 2020, to respond to this order by (1) explaining which of the three lawsuits identified above he wishes to pursue under this case number; (2) correcting the pleading defects identified in this order, if necessary; and (3) indicating whether he wishes to pursue either or both of the other two claims as separate cases.

2. Service of the complaint is STAYED pending Alexander's response to this order. If Alexander does not file a by May 28, 2020, I will enter an order dismissing this case.

3. All defendants other than defendants Smet, Raiman, and Stelsel are DISMISSED.

Entered May 7, 2020.

                          BY THE COURT:

                          /s/

                          _____

                          JAMES D. PETERSON
                          District Judge